1

2

3

4

5

6

7

8                           UNITED STATES DISTRICT COURT

9                      FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    SCOTT FRANK FIALHO,                          No.  2:21-cv-1698  DB P

12                    Plaintiff,

13          v.                                      ORDER AND FINDINGS AND
                                                    RECOMMENDATIONS
14    AULD, et al.,

15                    Defendants.

16

17          Plaintiff is a state prisoner proceeding pro se.  Before the court is plaintiff's complaint for

18    screening and plaintiff's motion to proceed in forma pauperis.  For the reasons set forth below,

19    this court grants plaintiff's motion to proceed in forma pauperis, grants petitioner leave to file an

20    amended complaint based on his Eighth Amendment claims, and recommends his claims based

21    on the Health Insurance Portability and Accountability Act and on California regulations be

22    dismissed with prejudice.

23                                 **IN FORMA PAUPERIS**

24          Plaintiff has submitted a declaration that makes the showing required by 28 U.S.C. §

25    1915(a).  Accordingly, the request to proceed in forma pauperis will be granted.

26          Plaintiff is required to pay the statutory filing fee of $350.00 for this action.  28 U.S.C. §§

27    1914(a), 1915(b)(1).  By this order, plaintiff will be assessed an initial partial filing fee in

28    accordance with the provisions of 28 U.S.C. § 1915(b)(1).  By separate order, the court will direct

                                                 1

the appropriate agency to collect the initial partial filing fee from plaintiff's trust account and forward it to the Clerk of the Court.  Thereafter, plaintiff will be obligated for monthly payments of twenty percent of the preceding month's income credited to plaintiff's prison trust account. These payments will be forwarded by the appropriate agency to the Clerk of the Court each time the amount in plaintiff's account exceeds $10.00, until the filing fee is paid in full.  28 U.S.C. § 1915(b)(2).

**SCREENING**

**I. Legal Standards for Civil Rights Complaints**

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or employee of a governmental entity.  See 28 U.S.C. § 1915A(a).  The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief.  See 28 U.S.C. § 1915A(b)(1) & (2).

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. Neitzke v. Williams, 490 U.S. 319, 325 (1989); Franklin v. Murphy, 745 F.2d 1221, 1227-28 (9th Cir. 1984).  The court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless.  Neitzke, 490 U.S. at 327.  The critical inquiry is whether a constitutional claim, however inartfully pleaded, has an arguable legal and factual basis.  See Franklin, 745 F.2d at 1227.  Rule 8(a)(2) of the Federal Rules of Civil Procedure "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).

However, in order to survive dismissal for failure to state a claim a complaint must contain more than "a formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient "to raise a right to relief above the speculative level."  Bell Atlantic, 550 U.S. at 555.  In reviewing a complaint under this standard, the court must accept as true the

allegations of the complaint in question, <u>Hospital Bldg. Co. v. Rex Hospital Trustees</u>, 425 U.S. 738, 740 (1976), construe the pleading in the light most favorable to the plaintiff, and resolve all doubts in the plaintiff's favor.  <u>Jenkins v. McKeithen</u>, 395 U.S. 411, 421 (1969).

The Civil Rights Act under which this action was filed provides as follows:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.  The statute requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by plaintiff.  <u>See</u> <u>Monell v. Dept. of Social Servs.</u>, 436 U.S. 658 (1978); <u>Rizzo v. Goode</u>, 423 U.S. 362 (1976).  "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." <u>Johnson v. Duffy</u>, 588 F.2d 740, 743 (9th Cir. 1978).

**II. Analysis**

**A. Allegations of the Complaint**

Plaintiff is incarcerated at Mule Creek State Prison ("MCSP").  He seeks relief for conduct that occurred there in 2020.  Plaintiff identifies the following defendants: (1) Auld, a registered nurse; (2) HLA, a physician; and (3) Malle, a physician.

Plaintiff alleges that starting in December 2020, he refused further testing for COVID-19.[1] Plaintiff claims that on December 28, 2020, he was placed on a 21-day quarantine for refusing the test. While in quarantine, a sign was posted on his cell door at the authorization of defendants. That sign stated "Failure to Test" and "compliance with future testing protocols will allow removal from 21-day quarantine."  Plaintiff claims the sign violated his right to medical privacy established by the Health Insurance Portability and Accountability Act ("HIPAA").

---

[1] It appears that plaintiff refused COVID testing for only a short period of time.  Exhibits attached to plaintiff's complaint show that, starting in January 2021, plaintiff has been tested numerous times.

Plaintiff alleges several other claims.  First, he contends that he has a right to refuse testing, as set out in 15 Cal. Code Regs. tit. 15, § 3999.210(e) ("Health care treatment, including medication, shall not be forced over the objections of a mentally competent patient.").  Second, he contends that posting the sign on his cell amounted to coercion to agree to testing, which violated his rights under the Eighth Amendment prohibition on cruel and unusual punishment.  Third, plaintiff claims that the length of the 21-day quarantine, which exceeded the 14-day quarantine recommended by the Centers for Disease Control and Prevention ("CDC"), also amounted to an Eighth Amendment violation.

Finally, plaintiff states that he was "constantly exposed" to COVID-19 from March 16 to April 5, 2021 when, after he had a false positive test, he was placed in a cell block with COVID-positive prisoners.  He appears to allege that his exposure to COVID-19 during that time also violated his Eighth Amendment rights.

For relief, plaintiff seeks damages from all defendants.

**B. Does Plaintiff State Claims Cognizable under § 1983?**

**1. HIPAA Claim**HIPAA prohibits the disclosure of a patient's medical information without his consent. See 42 U.S.C. §§ 1320d-1 to d-7.  However, the statute does not expressly create a private right of action to enforce this substantive prohibition.  See Freier v. Colorado, 804 F. App'x 890, 891-92 (10th Cir. 2020) (citing Wilkerson v. Shinseki, 606 F.3d 1256, 1267 n.4 (10th Cir. 2010) ("HIPAA does not create a private right of action for alleged disclosures of confidential medical information.")); Stewart v. Parkview Hosp., 940 F.3d 1013, 1015 (7th Cir. 2019); Dodd v. Jones, 623 F.3d 563, 569 (8th Cir. 2010); Seaton v. Mayberg, 610 F.3d 530, 533 (9th Cir. 2010); Acara v. Banks, 470 F.3d 569, 571 (5th Cir. 2006).  Therefore, plaintiff may not pursue a claim based on any rights under HIPAA in this § 1983 action.  Plaintiff's claim under HIPAA should be dismissed with prejudice.

**2. Violation of Regulations**

Plaintiff's allegation that revelation of his refusal to test violates California regulations does not state a claim under § 1983.  Noncompliance with state regulations is not cognizable under § 1983.  Rather, the conduct must rise to the level of a violation of a constitutional right to

4

1    be actionable.  See Davis v. Scherer, 468 U.S. 183, 192 (1984); Nurre v. Whitehead, 580 F.3d

2    1087, 1092 (9th Cir. 2009) (section 1983 claims must be premised on violation of a federal

3    constitutional right).  Plaintiff's state-law claim should be dismissed with prejudice.

4                        **3. Eighth Amendment Claims**

5            Plaintiff appears to attempt to state three claims under the Eighth Amendment:  (1) the

6    posting on his cell door coerced him to take the COVID-19 tests, amounting to excessive force;

7    (2) the 21-day quarantine was excessive; and (3) defendants failed to protect him by exposing him

8    to COVID-19.  To state a claim under the Eighth Amendment, a prisoner must allege that

9    objectively he suffered a serious deprivation and that subjectively prison officials acted with

10   deliberate indifference in allowing or causing the deprivation to occur.  Wilson v. Seiter, 501 U.S.

11   294, 298-99 (1991).

12                        **a. Coercion to Test**

13           To state an excessive force claim, plaintiff must allege facts showing that he was

14   subjected to excessive physical force that was applied "maliciously and sadistically to cause

15   harm" rather than "in a good-faith effort to maintain or restore discipline." Wilkins v. Gaddy,

16   559 U.S. 34, 37 (2010) (per curiam) (internal quotation omitted).

17           Plaintiff fails to state a claim for a number of reasons.  Plaintiff fails to show that the cell

18   door posting regarding his refusal to take a COVID test was done maliciously to coerce him to

19   take the test rather than for the legitimate purpose of protecting correctional officers and others.

20   Nor has plaintiff shown the testing itself amounted to excessive force.  Plaintiff does not explain

21   just what the tests entailed.  At least one court has approved testing as invasive as a deep nasal

22   swab.  See Wilcox v. Lancour, No. 2:20-cv-0183, 2021 WL 230113 (W.D. Mich. Jan. 22, 2021).

23           Courts have held that prisons have legitimate reasons to conduct regular testing or

24   prisoners for COVID-19.  As explained recently by a Nebraska district court:

25                   [T]here can be little doubt that Defendants in the instant case had a
                     legitimate penological purpose in testing the prison population for
26                   the SARS-CoV-2 virus. In the context of an Eighth Amendment
                     challenge to precautions taken by a federal prison in the face of the
27                   COVID-19 pandemic, the Sixth Circuit has held that COVID-19
                     poses a substantial risk of serious harm to prison inmates, given the
28                   substantial risk of contagion to those housed in close-contact

                                          5

situations, such as prisons, as well as the serious risks to health and life when the disease is contracted. *See Wilson v. Williams*, 961 F.3d 829, 840 (6th Cir. 2020) (recognizing the seriousness of both the transmissibility of COVID-19 in the prison setting and the health risks to individuals who contract the disease). Under these circumstances, Defendants had a legitimate—indeed compelling—governmental interest in testing all prisoners for the presence of the SARS-CoV-2 virus, in order to meet its obligations to control contagion and to protect its other prisoners and staff. *See Jolly v. Courghlin*, 76 F.3d 468, 477 (2d Cir. 1996) (holding that a prison had a compelling state interest in mandatory tuberculosis testing); *Dunn v White*, 880 F.2d 1188, 1195 (10th Cir. 1989) (holding that a prison had a legitimate penological interest in ascertaining the extent of contagion that justified coercive blood testing for AIDS); *Wilson v. Wilkinson*, 608 F. Supp. 2d 891 (S.D. Ohio 2007) (upholding state statute requiring mandatory DNA testing of prisoners against Fourth Amendment challenge); *see also McDougald v. Stone*, No. 1:17-cv-72, 2017 WL 8222430, at *5 (S.D. Ohio Aug. 22, 2017) (finding legitimate penological interest in mandatory blood-draw of prisoner who spit on officer).

Webb v. Johnson, No. 4:21-cv-3042, 2021 WL 2002712, at *6 (D. Neb. May 19, 2021).

Plaintiff fails to allege facts showing frequent COVID-19 testing was conducted maliciously and sadistically to cause harm or that he, in fact, suffered any harm from being required to test. While this court finds it very unlikely plaintiff can state a claim cognizable under § 1983 based on any coercion resulting from the posting, he will be permitted to amend his complaint to attempt to do so.

**b. Length of Quarantine**

Plaintiff's claim that a 21-day rather than a 14-day quarantine amounted to excessive punishment in violation of the Eighth Amendment does not amount to a cognizable claim under § 1983. Plaintiff fails to allege facts sufficient to show that the additional seven days in quarantine amounted to an "excessive risk of harm to his health or safety." Cervantes v. Adams, 507 F. App'x 644 (9th Cir. 2013) (citing See Farmer v. Brennan, 511 U.S. 825, 837 (1994)). Further, plaintiff does not provide any facts showing that defendants were responsible for the length of his quarantine. While, again, this court finds it unlikely plaintiff can state a claim regarding the length of his quarantine, he will be permitted to attempt to do so in any amended complaint.

////

**c. Placement with COVID-Positive Prisoners**

6

Prison officials have a duty "to take reasonable measures to guarantee the safety of inmates, which has been interpreted to include a duty to protect prisoners." Labatad v. Corrections Corp. of America, 714 F.3d 1155, 1160 (9th Cir. 2013) (citing Farmer, 511 U.S. at 832-33 and Hearns v. Terhune, 413 F.3d 1036, 1040 (9th Cir. 2005)). To establish a violation of this duty, a prisoner must "show that the officials acted with deliberate indifference to threat of serious harm or injury to an inmate." Id. at 1160 (citing Gibson v. County of Washoe, 290 F.3d 1175, 1187 (9th Cir. 2002)).

A failure to protect claim under the Eighth Amendment requires a showing that "the official [knew] of and disregard[ed] an excessive risk to inmate . . . safety." Farmer, 511 U.S. at 837. "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, . . . and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." Id. at 842 (citations omitted). The duty to protect a prisoner from serious harm requires that prison officials take reasonable measures to guarantee the safety and well-being of the prisoner. Id. at 832-33; Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998). Because "only the unnecessary and wanton infliction of pain implicates the Eighth Amendment," plaintiff must allege facts showing the defendant acted with a "sufficiently culpable state of mind." Wilson, 501 U.S. at 297 (internal quotations marks, emphasis, and citations omitted).

To prove the objective component, an inmate must establish that there was both some degree of actual or potential injury, and that society considers the risk that the plaintiff complains of to be so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk. Helling v. McKinney, 509 U.S. 25, 36 (1993). The risk of contracting COVID-19 is sufficiently serious under the Eighth Amendment. Williams v. Dirkse, No. 1:21-cv-00047-NONE-BAM (PC), 2021 WL 2227636, at *9 (E.D. Cal. June 2, 2021) ("The transmissibility of the COVID-19 virus in conjunction with [the prisoner plaintiff's] living conditions are sufficient to satisfy that 'conditions put the plaintiff at substantial risk of suffering serious harm.'"), rep. and reco. adopted, 2021 WL 4776904 (E.D. Cal. Oct. 13, 2021).

However, plaintiff fails to state facts showing that, subjectively, defendants acted with a

7

1    culpable state of mind.  Plaintiff simply states that defendants authorized his placement in an area

2    with COVID-positive prisoners.  While plaintiff does not provide direct evidence of a false

3    positive test, he does show that during the course of his placement in the COVID-19 unit, he

4    twice tested negative for the virus.  (See ECF No. 1 at 15 (test on March 19 was negative), at 21

5    (test on March 30 was negative).)

6         To state a claim for failure to protect, plaintiff must allege specific facts showing that (1)

7    each defendant authorized his placement in the COVID-positive area; (2) each defendant was

8    aware at the time plaintiff was placed in that area that he had falsely tested positive; (3) each

9    defendant was aware that plaintiff tested negative after he had been moved to that area; (4) each

10   defendant had the authority to remove plaintiff from COVID-positive area, and (4) each

11   defendant's refusal to remove plaintiff amounted to deliberate indifference to plaintiff's well-

12   being.  Plaintiff may attempt to make the necessary showing in any amended complaint.

                                    **CONCLUSION**

14        Above, this court finds plaintiff fails to state any claims for relief under 42 U.S.C. § 1983.

15   Plaintiff will be given an opportunity to amend the complaint to attempt to state an Eighth

16   Amendment claim.  This court will recommend the HIPAA claim and the state law claim based

17   on California regulations be dismissed with prejudice.

18        In an amended complaint, plaintiff must address the problems with his complaint that are

19   explained above.  Plaintiff is advised that in an amended complaint he must clearly identify each

20   defendant and the action that defendant took that violated plaintiff's constitutional rights.  The

21   court is not required to review exhibits to determine what plaintiff's charging allegations are as to

22   each named defendant.  If plaintiff wishes to add a claim, he must include it in the body of the

23   complaint.  The charging allegations must be set forth in the amended complaint so defendants

24   have fair notice of the claims plaintiff is presenting.  That said, plaintiff need not provide every

25   detailed fact in support of the claims.  Rather, plaintiff should provide a short, plain statement of

26   each claim.  See Fed. R. Civ. P. 8(a).

27   ////

28        Any amended complaint must show the federal court has jurisdiction, the action is brought

                                           8

in the right place, and plaintiff is entitled to relief if plaintiff's allegations are true.  It must contain a request for particular relief.  Plaintiff must identify as a defendant only persons who personally participated in a substantial way in depriving plaintiff of a federal constitutional right.  Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978) (a person subjects another to the deprivation of a constitutional right if he does an act, participates in another's act or omits to perform an act he is legally required to do that causes the alleged deprivation).  "Vague and conclusory allegations of official participation in civil rights violations are not sufficient."  Ivey v. Bd. of Regents, 673 F.2d 266, 268 (9th Cir. 1982) (citations omitted).

In an amended complaint, the allegations must be set forth in numbered paragraphs.  Fed. R. Civ. P. 10(b).  Plaintiff may join multiple claims if they are all against a single defendant.  Fed. R. Civ. P. 18(a).  If plaintiff has more than one claim based upon separate transactions or occurrences, the claims must be set forth in separate paragraphs.  Fed. R. Civ. P. 10(b).

The federal rules contemplate brevity.  See Galbraith v. Cnty of Santa Clara, 307 F.3d 1119, 1125 (9th Cir. 2002) (noting that "nearly all of the circuits have now disapproved any heightened pleading standard in cases other than those governed by Rule 9(b)"); Fed. R. Civ. P. 84; cf. Rule 9(b) (setting forth rare exceptions to simplified pleading).  Plaintiff's claims must be set forth in short and plain terms, simply, concisely and directly.  See Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514 (2002) ("Rule 8(a) is the starting point of a simplified pleading system, which was adopted to focus litigation on the merits of a claim.");  Fed. R. Civ. P. 8.

An amended complaint must be complete in itself without reference to any prior pleading.  E.D. Cal. R. 220.  Once plaintiff files an amended complaint, the original pleading is superseded.  By signing an amended complaint, plaintiff certifies he has made reasonable inquiry and has evidentiary support for his allegations, and for violation of this rule the court may impose sanctions sufficient to deter repetition by plaintiff or others.  Fed. R. Civ. P. 11.

For the foregoing reasons, and good cause appearing, IT IS HEREBY ORDERED as follows:

1.  Plaintiff's motion to proceed in forma pauperis (ECF No. 2) is granted.

2.  Plaintiff is obligated to pay the statutory filing fee of $350.00 for this action.  Plaintiff

9

1   is assessed an initial partial filing fee in accordance with the provisions of 28 U.S.C. §

2   1915(b)(1).  All fees shall be collected and paid in accordance with this court's order to the

3   Director of the California Department of Corrections and Rehabilitation filed concurrently

4   herewith.

5       3.  Plaintiff's complaint (ECF No. 1) is dismissed with leave to amend.

6       4.  Plaintiff is granted sixty days from the date of service of this order to file an amended

7   complaint that complies with the requirements of the Civil Rights Act, the Federal Rules of Civil

8   Procedure, and the Local Rules of Practice; the amended complaint must bear the docket number

9   assigned this case and must be labeled "First Amended Complaint;" failure to file an amended

10  complaint in accordance with this order may result in a recommendation that this action be

11  dismissed.

12      5.  The Clerk of the Court is directed to send plaintiff a copy of the prisoner complaint

13  form used in this district and to randomly assign a district judge to this case.

14      Further, IT IS RECOMMENDED that plaintiff's claims based on the Health Care

15  Portability and Accountability Act and on California regulations be dismissed with prejudice.

16      These findings and recommendations will be submitted to the United States District Judge

17  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within thirty days after

18  being served with these findings and recommendations, plaintiff may file written objections with

19  the court.  The document should be captioned "Objections to Magistrate Judge's Findings and

20  Recommendations."  Plaintiff is advised that failure to file objections within the specified time

21  may result in waiver of the right to appeal the district court's order.  Martinez v. Ylst, 951 F.2d

22  1153 (9th Cir. 1991).

23  Dated:  October 26, 2021

24

25

    _____
26  DEBORAH BARNES
    UNITED STATES MAGISTRATE JUDGE

27  DLB:9/DB prisoner inbox/civil rights/S/fial1698.scrn LTA & fr

28